IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | **FOR FORFEITURE** |
| $19,000.00 IN UNITED | ) | |
| STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $19,000.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about January 19, 2007, the Defendant property was seized in Omaha, Nebraska by deputies of the Douglas County Sheriff's Office; the property is currently held by the United States Marshals Service. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Deon Owens has filed a Claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

6. On January 19, 2007, Deon Owens was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

    a.    On Friday, January 19, 2007, at 1:36 p.m., Douglas County Sheriff's Deputy JasonBargstadt was westbound on Interstate 80 near "I" Street. Deputy Bargstadt observed a dark colored SUV westbound near the same location directly in front of him. Deputy Bargstadt observed the SUV to be passing vehicles and going at a rate of speed faster than the posted 60 miles per hour. Deputy Bargstadt got directly behind the vehicle, which was traveling in the fast (left) lane. While behind the SUV, Deputy Bargstadt observed the vehicle to be traveling at 71 miles per hour.

    b.    Deputy Bargstadt initiated a traffic stop on the vehicle bearing Indiana license plate 699951L at "Q" Street and westbound Interstate 80. Deputy Bargstadt contacted the driver of the vehicle Deon Owens. Mr. Owens was advised he was stopped for speeding. Deputy Bargstadt asked for Mr. Owens' driver's license and vehicle documentation. Deputy Bargstadt observed two additional males inside the vehicle traveling with Mr. Owens.

    c.    Deputy Bargstadt asked Mr. Owens to meet beside Deputy Bargstadt's cruiser in order for paperwork to be completed regarding

2

the traffic violation. Deputy Bargstadt then asked Mr. Owens to sit in the front of his cruiser. Mr. Owens stated he did not want to sit in the car due to a canine being present. Deputy Bargstadt told Mr. Owens he could stand alongside the shoulder of the road as Deputy Bargstadt completed his ticket.

d.      Deputy Bargstadt began filling out a warning citation to Mr. Owens as he stood beside him. During that time, Deputy Bargstadt made conversation with Mr. Owens about his travel plans. Mr. Owens informed Deputy Bargstadt he and his passengers were going to California from their home in Indiana. Mr. Owens informed Deputy Bargstadt they were planning on meeting his uncle and planned on staying at least a month. Mr. Owens said this was for a vacation and nothing else business or work related.

e.      Deputy Bargstadt completed the warning and issued it to Mr. Owens. Deputy Bargstadt asked Mr. Owens if he had ever been arrested and he said, "Yeah". Deputy Bargstadt asked Mr. Owens what he had been arrested for in the past. Mr. Owens took a long pause and said he did not remember what it was for.

f.      Deputy Bargstadt told Mr. Owens a record check needed to be completed. Deputy Bargstadt went back to the SUV and asked all of the occupants for identification regarding a records check. While the occupants were getting out their identification, Deputy Bargstadt

asked the two passengers where they were going on vacation. The two occupants said they were headed to California to meet with the driver's uncle and cousin. Deputy Bargstadt asked the occupants how long they planned on staying. They said approximately two days. They also said they had planned on returning on Monday. Deputy Bargstadt clarified this by asking where they planned on returning and both said they would be back in Indiana on Monday.

g.    Deputy Bargstadt retrieved the I.D.s from both occupants and spoke again with the driver standing beside Deputy Bargstadt's cruiser. For clarification purposes, Deputy Bargstadt asked Mr. Owens again how long all of them would be vacationing in California. Mr. Owens said they would be staying at least a month.

h.    Deputy Bargstadt began wants and warrants checks on Mr. Owens and his passengers. Mr. Owens was allowed to sit inside of his SUV while the check was completed. Also inside the vehicle were his passengers, Dewan Burnett and Edward Hazzard.

i.    During the course of the records check, it was determined Mr. Owen's passenger Mr. Burnett had a current felony warrant out of Marion County, Indiana. The felony warrant was for cocaine possession and weapons violations. Mr. Burnett was arrested by Deputy Bargstadt and Sergeant Van Buren, whom arrived earlier to assist. Marion County stated it would extradite Mr. Burnett for the

4

felony charges. Mr. Burnett was placed in handcuffs and placed inside of a patrol cruiser.

j.    Due to the suspicious travel itinerary and felony arrest, Deputy Bargstadt asked Mr. Owens if there were any weapons or contraband in the vehicle. Deputy Bargstadt asked Mr. Owens if there were any large amounts of cocaine, heroin, methamphetamine or marijuana inside the vehicle. Mr. Owens said no to the questions. Deputy Bargstadt asked Mr. Owens if there were any large amounts of money inside of the vehicle. Mr. Owens looked away from Deputy Bargstadt. Mr. Owens said it was none of Deputy Bargstadt's business. Deputy Bargstadt asked Mr. Owens if he had any large amounts of money in the vehicle over $10,000.00. Mr. Owens again became defensive and asked Deputy Bargstadt, "What do you need to know for?".

k.    Deputy Bargstadt asked Mr. Owens for permission to search the vehicle. Mr. Owens became defensive and would not answer Deputy Bargstadt's questions. Deputy Bargstadt took the non-response as a denial of consent. Mr. Owens was asked to step from the vehicle as a narcotics indication canine would be walked around the vehicle. Sergeant Van Buren used his Nebraska State Certified narcotics detector canine "Rocky" to sniff Mr. Owens' vehicle. Rocky is certified to detect the odors of marijuana, cocaine, heroin and methamphetamine. Rocky is a passive indication canine meaning he

5

will sit and stare once he detects any of the mentioned odors. Rocky was walked around the vehicle by Sergeant Van Buren. Rocky indicated to the driver's side rear door.

l.     Deputy Bargstadt and Sergeant Van Buren began a search of the vehicle. While searching the vehicle, Deputy Bargstadt opened a brown and tan gym bag. Inside the gym bag, Deputy Barstadt saw a large amount of U.S. currency. The currency was kept together with rubber bands. Deputy Bargstadt did a rough count of the currency and determined it to be approximately $20,000.00.

m.    Mr. Owens was asked about the suspect currency. He said he was in the real estate business. Mr. Owens said the real purpose of his trip to California was to buy and sell properties. Deputy Bargstadt asked Mr. Owens where he planned on buying properties. Mr. Owens showed Deputy Bargstadt an advertisement for "John Beck's 'Free and Clear' Real Estate System". Apparently the ad was telling Mr. Owens he had to call a toll-free number in order to get videos and instructions on how to get into the real estate business. Mr. Owens could not provide any further documentation as to proof of his plans of purchasing real estate in California.

n.     Mr. Burnett was transported in handcuffs to the Douglas County Sheriff's Office for booking. *Messrs*. Hazzard and Owens were also transported to the Douglas County Sheriff's Office. Mr. Owens'

vehicle was towed to the Douglas County Sheriff's Office for a more detailed search. Deputy Bargstadt followed the tow and secured the suspect currency.

o.   Once at the Douglas County Sheriff's Office, a currency sniff was completed in the men's locker room. Deputy Bargstadt used his Nebraska State Certified narcotics detector canine "Argay" for the sniff. Argay is certified to detect the odors of cocaine, marijuana, methamphetamine and heroin. Argay is a passive indication canine meaning he will sit and stare once he detects any of the mentioned odors.

p.   Argay was walked around the locker room prior to the suspect currency being placed inside of the room. Argay did not indicate to any of the lockers. Sergeant Van Buren placed the seized currency inside of an unknown locker. After the money was placed inside, Argay was walked around the locker room for a second time. Also present in the locker room was circulated and un-circulated currency. Argay indicated to the locker with the suspect currency inside. Argay did not indicate to any of the lockers with the circulated and un-circulated currency.

q.   The money was seized and placed into property at 7:00 p.m. Drug Enforcement Administration agents interviewed *Messrs.* Hazzard, Burnett and Owens about the legitimacy of the suspect currency. Mr.

Owens claimed the currency. He said he buys and sells properties. Mr. Owens said he could provide legitimate documentation to the suspect currency. *Messrs.* Hazzard and Owens left the Douglas County Sheriff's Office in their vehicle at approximately 7:35 p.m. Mr. Burnett was transported to the Douglas County Corrections Center after booking procedures were completed.

7.  By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOE W. STECHER
United States Attorney


By: _____
NANCY A. SVOBODA  (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700


VERIFICATION


STATE OF NEBRASKA       )
                        ) ss.
COUNTY OF DOUGLAS       )

Pursuant to Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

_____
NANCY A. SVOBODA  (#17429)
Assistant U.S. Attorney


Subscribed and sworn to before me this _14__ day of June, 2007

GENERAL NOTARY - State of Nebraska
PATRICIA A. CARMAN
My Comm. Exp. April 24, 2008

_____
Notary Public

9

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney