IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV214 |
| | ) | |
| v. | ) | |
| | ) | |
| $20,000.00 IN UNITED STATES CURRENCY, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court following a nonjury, evidentiary hearing on January 22, 2008. The government brought this suit alleging that it is entitled to $20,000.00 in cash in accordance with 28 U.S.C. §§ 1345, 1355, and 1395, pursuant to Title 21 U.S.C. § 881, seized pursuant to a stop of a vehicle on January 19, 2007. Mr. Deon Owens was the driver of the vehicle wherein $20,000 in cash was discovered, and the government alleges the cash is a result of drug transactions. Mr. Owens argues that the money is a product of a legitimate enterprise wherein he sells real estate for a profit. After reviewing the facts, evidence and the relevant caselaw, the court determines the government has failed to meet its burden that this money should be forfeited.[1]

Deputy Jason Bargstadt testified that he observed a vehicle speeding on or about January 19, 2007, on Interstate 80 in Omaha, Nebraska. Deputy Bargstadt pulled the vehicle over and effectuated a traffic stop. Mr. Owens had two passengers in the car with him, Dewan Burnette, the frontseat passenger and Edward Hazzard, the backseat

---

[1]Mr. Owens contends that law enforcement detained him illegally on two occasions during the traffic stop. Because the court has concluded the government failed in its burden to prove the $20,000 is related to drug activities, the court will not decide the issue of the illegal detentions.

passenger.  Deputy Bargstadt asked for Mr. Owens' license, registration and proof of insurance and then asked Mr. Owens to accompany him to the police vehicle for a warning ticket.  Mr. Owens was afraid of the canine dog in the deputy's car, so Mr. Owens was permitted to stand outside of the patrol car.  This scenario was recorded on a DVD, but for the first minutes the microphone did not activate and there was no recorded conversation.  Filing No. 27, Ex. 1.  Deputy Bargstadt asked Mr. Owens questions regarding his travel plans.  Mr. Owens responded, according to Deputy Bargstadt, that he had been in Indianapolis and was traveling to California and would be there for about a month on vacation.  When asked about criminal history, Mr. Owens said yes, he was arrested once.  At first Mr. Owens apparently said he could not remember for what he was arrested, but then he said it was for not following directions and it occurred a number of years ago.  At some point thereafter Mr. Owens told law enforcement that he was going to California to buy property.

Deputy Bargstadt then spoke to the occupants of the vehicle.  It appears the deputy had already written the warning ticket for Mr. Owens at this time.  Both occupants said they were going to California for a couple of days.  Mr. Owens got back in his car.  Deputy Bargstadt called his supervisor, Sergeant Edward Van Buren.  Deputy Bargstadt told Sergeant Van Buren that these guys look like gang-bangers and big-time thugs.  He then ran a records check on all three of the occupants.  The records check for Mr. Owens and Mr. Hazzard showed no wants or warrants.  Mr. Burnett had an active felony warrant out from Indianapolis for possession of cocaine and possession of a handgun.  The officers arrested Mr. Burnett.[2]  Officer Bargstadt then asked for confirmation of the felony warrant

---

[2]Neither Mr. Burnett nor Mr. Hazzard had a driver's license, but they had other forms of identification.

2

on Mr. Burnett.  This took some time as the dispatcher had to confirm and then contact the Indianapolis police officials to assure that they would extradite Mr. Burnett.

While waiting, Deputy Bargstadt asked Mr. Owens if he could search the vehicle. Mr. Owens declined.  By this time, Sergeant Van Buren had arrived.  Mr. Owens was also asked if he had a large sum of money in his car.  Mr. Owens declined to answer.  Sergeant Van Buren walked his canine dog, Rocky, around the vehicle.  Rocky responded with a positive indication for drugs.  Officers also asked Mr. Owens if he knew the occupants of a vehicle that was driving in front of his vehicle.  He said no.  By this time, additional officers had arrived.  The officers took everyone out of the vehicle and searched it.  Inside the vehicle, the officers found a duffle bag with $20,000 in United States currency.  Some of the cash was in bundles rubber banded together in a paper bag and the remainder of the money was loose in clothing.  Officer Bargstadt testified that in his experience when money is bundled together, it is for an illegal purpose.  When asked about the money, according to Deputy Bargstadt, Mr. Owens told him he was buying and selling properties in California, as he was in the real estate business.  Mr. Owens also noted that on the DVD, Ex. 1, Deputy Bargstadt states: "He was being a dick before.  I say we take his money and, um, count it as a drug seizure."  The officers also discuss how they could also use new laptops in their offices, apparently with the seized money.  The officers found no drugs or other illegal items in Mr. Owen's vehicle.  Officer Bargstadt took the money into custody.  The vehicle was towed to the sheriff's office and searched again, but the officers found nothing illegal.  After the officers *Marandized* Mr. Owens, he was questioned by Drug Enforcement Special Agents Brent Fisher and Frank Feden.  Mr. Owens admitted that he knew the identity of the car in front of him, but he did not want to get that person in trouble as the driver had a suspended sentence.  Mr. Owens was then allowed to leave.  Mr.

Owens asked how he could get his money back. He was informed he should submit a letter with his proof supporting his version of how he acquired the money. He did as directed. Filing No. 27, Ex. 101. Law enforcement did not return his money.

Officer Bargstadt took his dog into a locker room commonly used with the canine drug dogs. It has about 100 lockers, many filled with shredded money, not tainted with drugs. Officer Bargstadt's dog, Argay, did not alert. Thereafter, Sergeant Van Buren took the money seized from Mr. Owens' car and placed it in a locker. Officer Bargstad returned with his dog, and Argay alerted to the locker containing the $20,000. The government rested its case.[3]

Mr. Owens then presented his case. Mr. Owens explained to the officers and testified in court that he "flips" real estate. He buys rundown houses, fixes them up, and then makes a profit. He has sold approximately six houses to date. Mr. Owens offered evidence during the hearing that shows his permit to remodel homes, his contractor's license, his financial papers to refinance the property, his bank statements showing checks he received for the sale, his HUD closing statement, and information from the title company, all in support of his claim. Filing No. 27, Ex. Nos. 103, 104, 105, 106, 107, 108, 109, 110, 110A. He further testified that he carried this $20,000 with him for (1) business purposes in California concerning purchase of houses, and (2) because he was going through a divorce and did not want his ex-wife to have the money. Mr. Owens testified that he came into possession of the $20,000 when he sold an investment property in October 2006, where he netted about $53,000. He received two checks for $25,000 each and took

---

[3]Following the government's case in chief, Mr. Owens moved to dismiss. The court took the motion under advisement.

$3,000 in cash.[4]  In November he took a $25,000 check to First Indiana Bank, received $8,000 in cash and a cashier's check for $17,000.  Again, according to Mr. Owens, he did not deposit the money as he did not want his ex-wife to have access to the funds.  On December 21, 2006, he went to the bank and received $17,000 in cash for his cashier's check.  That, plus the $3,000 he already had in cash, constituted his $20,000.00.

"In a forfeiture action under 21 U.S.C. § 881 the United States bears the initial burden of establishing by a preponderance of the evidence that the property is substantially connected to drug trafficking.  *See* 18 U.S.C. §§ 983(c)(1) and (3).  Circumstantial evidence can be used by the United States to establish its burden of proof."  *United States v. $84,615 in United States Currency*, 379 F.3d 496, 501 (8th Cir. 2004) (citation omitted).  Further, the Eighth Circuit has held that a large sum of cash is evidence of a connection to drug activity.  *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006).  Also, the Eighth Circuit has held that a dog alert to currency provides "some - albeit slight - indication" of a connection of the money to drug activities.  *United States v. $84,615 in United States Currency*, 379 F.3d at 502; *but see, Muhammed v. Drug Enforcement Agency*, 92 F.3d 648, 653 (8th Cir. 1996), where Judge C. Arlen Beam stated: "the government further refers to the drug dog's alert to the cash.  However it is well established that an extremely high percentage of all cash in circulation in America today is contaminated by drug residue. . . .  The fact of contamination, alone, is virtually meaningless, and gives no hint of when or how the cash became so contaminated."  (Citation omitted.)  The government argues that the post-*Muhammed* Eighth Circuit cases

---

[4]The evidence shows Mr. Owens gave the other $25,000 check to his mother.

allow this evidence as part of its case in chief, and the government further argues the language in *Muhammed* is really dicta.  Further, the government argues that it need not show evidence of, or trace the money, to particular drug transactions.   *United States v. $150,660 in United States Currency*, 980 F.2d 1200, 1205 (8th Cir. 1992).

The evidence supports Mr. Owens' version of the story.  The government's evidence consisted of $20,000 worth of money bagged, some loose and some in rubber bands; an inconsistent statement regarding another car traveling in front of Mr. Owens; a possible inconsistent statement about how long the parties were staying in California; a dog sniff alert at the car; a dog sniff alert at the station; and one passenger with an outstanding felony warrant.  This evidence is slim at best.  The court finds the government has not met its burden of showing the connection between the $20,000 in currency and drug activities.

However, for the sake of argument the court notes that had the government proven its case, the burden is on Mr. Owens to establish that he is an "innocent owner" of the $20,000 pursuant to 18 U.S.C. § 983(d).  Mr. Owens came forward with credible evidence of a legitimate business, supported by substantial documentation.  In fact, back on January 21, 2007, Mr. Owens provided a letter to Sergeant Van Buren explaining how he received the $20,000.  Ex. 101.  His testimony in court was consistent with that letter.  The court finds Mr. Owens to be a credible witness.  The court further finds that based on the testimony as received in this case and the overwhelming evidence of his story as supported in Exhibits 103-110A, Mr. Owens has established that he is an "innocent owner" of the $20,000 pursuant to 18 U.S.C. § 983(d).  The court finds the money is traceable to legitimate earnings, and accordingly denies the government's request for forfeiture in this case.

6

THEREFORE, IT IS ORDERED:

1.   The government's motion for forfeiture is denied.

2.   The government shall immediately return the $20,000 to the defendant.

3.   The court will give the Mr. Owens ten days from the date of this order to provide the court with a brief regarding attorney fees, costs, and interest.  The government shall have ten days thereafter to file its brief in opposition to attorney fees, costs and interest.

DATED this 5th day of February, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

7